## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 17 2017, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael G. Ruppert
Lauren E. Harpold
Ruppert & Schaefer, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Krysten A. Overly,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Mark E. Overly,<br>*Appellee-Respondent.* | February 17, 2017<br><br>Court of Appeals Case No.<br>29A02-1609-DR-2192<br><br>Appeal from the Hamilton Superior Court<br><br>The Honorable William J. Hughes, Judge<br><br>Cause No. 29D03-1310-DR-9886 |

**Bradford, Judge.**

# Case Summary

[1] Appellant-Petitioner Krysten Overly ("Mother") and Appellee-Respondent Mark Overly ("Father") were married and had two children ("the Children") before Mother filed for dissolution of the marriage in 2013. In April of 2014, the trial court issued a dissolution decree ("the Decree") which reflected a negotiated settlement between the parties. The Decree provided that the parties would share legal custody of the Children, Mother would have sole physical custody, and Father would pay $155.00 per week in child support and also be responsible for several other financial obligations.

[2] In July of 2015, Mother filed a motion for a rule to show cause, alleging that Father was in arrears in child support and his other obligations. The trial court eventually found Father to be in contempt of court. In October of 2015, Father petitioned the trial court to modify his parenting time and child support obligation, alleging a significant change in circumstances.

[3] In April of 2016, the trial court held a hearing on outstanding motions and issued its order in August of 2016. The trial court found a significant change in circumstances—namely, changes in Mother's and Father's incomes—and ordered that Mother pay Father $118.00 per week in child support, retroactive to October of 2015. The trial court also found that Father owed Mother approximately $22,000.00 in back child support and other unpaid obligations all together, said amount to be reduced to two money judgments. Pursuant to the trial court's order, Father's child-support arrearage of $5401.00 would be paid

off with weekly payments of $100.00. Mother contends that the trial court abused its discretion in ordering that she pay the child support amount dictated by application of the Indiana Child Support Guidelines ("the Guidelines") and also in not ordering a deviation from the Guideline amount. Because we conclude that, under the unique circumstances of this case, a modification of the trial court's order is warranted, we affirm in part and remand with instructions.

# Facts and Procedural History

[4] Mother and Father were married on June 15, 2000. The marriage produced two children, M.O. and R.O. ("the Children"). Mother is a self-employed financial planner and Father works in sales.

[5] On October 22, 2013, Mother petitioned for dissolution of the marriage. On April 28, 2014, the trial court issued the Decree, which reflected a settlement agreement negotiated by the parties. The Decree provided that the parties would share legal custody, Mother would have sole physical custody, and Father would have parenting time pursuant to the Guidelines or "as the parties agree." Appellant's App. Vol. II p. 36. Father agreed to pay Mother $155.00 per week in child support and Mother agreed to provide the Children's health insurance. Father also agreed to be responsible for the following obligations to Mother: (1) A monthly payment of $202.45 for his vehicle's lease (which was in Mother's name), (2) a monthly payment of $300.00 for 105 months for his portion of the marital debt, (3) fifty percent of all uninsured and unreimbursed

medical expenses for the Children, (4) fifty percent of costs related to extracurricular activities, (5) fifty percent of Children's secondary-school-related expenses, and (6) fifty percent of work-related child-care expenses.

[6] On July 27, 2015, Mother filed a motion for rule to show cause, alleging that Father was in arrears in his child support payments and had failed to make payments for the parties' marital debt and Children's expenses as agreed. Approximately two months later, Mother filed a second motion for rule to show cause, alleging that Father had relocated frequently without notice to her. On September 29, 2015, the trial court found Father in contempt and ordered him to pay $400.00 to Mother for attorney's fees. On October 19, 2015, Father petitioned for modification of parenting time and child support, alleging changed financial circumstances.

[7] On April 26, 2016, the trial court held a hearing on pending motions. Mother testified that Father had accumulated unpaid court-ordered obligations of $30,196.10. On August 31, 2016, the trial court issued its order, which provides, in part, as follows:

> 6. [Mother] is employed as a financial planner and experiences a substantial variance in income from year to year. In the three calendar years prior to dissolution she earned an average net gross income of $142,684.00 per year or $2,744.00 per week. In the two full calendar years and 2016 projected from actual income to the date of hearing, she earned an average of $178,684.00 per year or $3,436.00 per week. [Mother] listed her gross income on her financial declaration at $4,006.00 per week after deduction for self-employment tax. The Court finds the appropriate gross income to use for [Mother] is $3,[43]6.00 per week

7. [Father] has gross weekly income of $900.00 per week. In addition he is provided a vehicle for work usage which the Court finds has a reasonable value of $75.00 per week. The Court finds that [Father] has gross weekly income of $975.00. The Court also finds that [Father] was unemployed for a period of time after the dissolution was entered but he is now employed full time.

8. [Mother] incurs work related child care expenses of $100 per week for the minor children. And she incurs a cost of $51.00 per week to provide medical insurance for the minor children. *See, CSOW submitted by* [Mother].

9. The Decree of dissolution herein provides that [Father] will have parenting time with the minor children as the parties agree and if they fail to agree then Friday to Sunday every other weekend, one evening per week not overnight, one half of the summer vacation, one half of balanced calendar Fall, Winter and Spring breaks and alternating major holidays per the guidelines. The parties have added additional overnights by making the midweek visitation an overnight and by extending weekend visitation through Sunday nights. This results in 5 overnights per 14 day period, of which there are 20.3 of those periods in an average age year after consideration for summer visitation and extended fall, winter and Spring Breaks. This results in an average of 150 overnights per year in [Father].

10. [Father] has requested that the child support be retroactive to the date he filed his Petition and the Court finds that this is appropriate. Pursuant to the Decree weekly child support was payable at the rate of $155.00 per week from [Father] to [Mother]. In addition, the parties agreed to waive the 6% rule and to each share 50% of uninsured medical, dental and optical expenses, and further, each agreed to pay 50% of agreed extracurricular expenses, educational and work-related child care expenses. The parties agreed to split only those extracurricular expenses for which there was agreement in writing before the expense was incurred, and educational expenses were defined as limited to books, supplies and/or other school fees, field trips and other miscellaneous events and school lunches. This was supported by a child support guideline worksheet attached to the decree. (The Court notes that while the parties agreed to pay child care outside of the decree the child support worksheet included [$]131 per week in child care expenses of which by the nature of the application resulted in

[Mother]'s obligation under the worksheet being increased by 37.41% of that amount or $50.82 cents per week. In addition, the parties' child support agreement deviated substantially from the guidelines regarding medical expenses with the potential result of an increase in [Father]'s weekly child support obligation of up to $13.50 per week. The parties do not set forth the justification for their deviation in their settlement agreement and Magistrate Najjar made no finding supporting a deviation from the guidelines in the decree he entered herein on April 23, 2014.)

11. There has been a substantial and continuing change in circumstances in the parties' income so substantial that a modification of child support is required. The Court finds that the application of the Indiana Child Support Guidelines to the factors found above results in a child support obligation of $118.00 per week payable from [Mother] to [Father]. This child support obligation is made retroactive to October 23, 2015, the first Friday after the date [Father] filed his Petition to Modify.

12. [Mother] testified by way of her Exhibit 1 that between the effective date of the child support obligation under the decree and the date of the hearing that $15,810 in child support has accrued at the rate of $155.00 per week. The Court finds that this results in a finding that there had been 102 weekly child support payments due between the date child support began and Friday, April 22, 2016. The Court notes that the decree provided for an uncertain begin date, the first Friday after [Father] moved out of the Marital Residence. That date is not reflected in the record herein. Between the date child support modification became effective, Friday October 23, 2015 and Friday April 22, 2016, 27 weekly payment dates elapsed. The Court notes that [Mother] testified that in the time frame at issue the May 2014 to April 2016 [Father] paid a total of $3,038.00 in child support. The Court finds an arrearage in child support exists as follows:

Support from Decree to October 16, 2015
$155 per week for 75 weeks payable to [Mother] $11,625.00
Actual payments paid in the period at issue -$3,038.00
Unpaid support owed by [Father] $8,587.00

Support from October 23, 2015 to April 22, 2016
118.00 Per week for 27 weeks payable to [Father] -$3,186.00

Net Arrearage Due [Mother]                    $5,401.00

13. [Father] was ordered to pay [Mother] $202.45 per month for lease payment on the vehicle he was driving at the time of dissolution until the lease term expired. He did not make any of those payments, and he has accrued an arrearage of $3,238.84 which should be reduced to judgment. The Court finds that for at least a portion of the time [Father] was able to make those payments.

14. [Father] was ordered to pay to [Mother] the sum of $300 per month to satisfy his portion of marital debt for 105 months or until the debt was paid in full which ever [sic] was later. On the date of the hearing [Father] was in arrears $6,990 in those payments. *See* [Mother]*'s Exhibit 1*. Said sum should be reduced to judgment and the Court finds that for at least a portion of the time [Father] was able to make those payments.

15. [Mother] testified that during the period from the dissolution until the hearing [Father] was delinquent in payments he agreed to make for [e]xtra-curricular expenses in the sum of $558.00. *See* [Mother]*'s Exhibit 1*. Said sum should be reduced to judgment and the Court finds that for at least a portion of the time [Father] was able to make those payments.

16. [Mother] testified that [Father] was in arrears the sum of $279.00 in school [b]ooks and $185.00 in school lunches. School fees, books and lunches are included in controlled expenses, and are therefore part of the child support ordered paid beginning October 23, 2015. [Mother] has failed to provide the Court with sufficient evidence to adjust the sums in consideration for the period after the change in child support. The Court finds that of the time passing from the Decree to the date of hearing approximately 25% was after the date of the change in support and reduces these sums to $209.00 and $139.00. Said sum should be reduced to judgment and the Court finds that for at least a portion of the time [Father] was able to make those payments.

17. [Mother] testified that she expended $4,143.00 for work related child care during summer period and school breaks. These expenses were incurred for period prior to the change in child support and [Father] was responsible for 1/2 of these expenses pursuant to the parties' agreed decree approved by the Court. Said sum should be reduced to judgment and the Court finds that for at

least a portion of the time [Father] was able to make those payments[.]

18. [Mother] testified that she incurred $6,222.00 in AYS[1] expenses from April 2014 to the date of the hearing. Of this sum $1,429.00 was incurred after the modification is support and said expense is now included in the child support calculation. The court finds that prior to modification [Mother] incurred $4,793.00 of which [Father] was obligated to pay $2,396.50. Said sum should be reduced to judgment and the Court finds that for at least a portion of the time [Father] was able to make those payments.

19. Lastly there is the issue of medical expenses. The court finds that as part of the modification of child support effective January 1, 2016, the parties shall apportion uninsured medical, dental and optical expense pursuant to the 6% rule. In the calendar year 2016 [Mother] has incurred $274 in uninsured medical expenses for the minor children which was included in her claim that she had incurred uninsured medical expenses from April 2014 to April 2016. After that reduction [Mother]'s claim is for 50% of $1,886.00 or $943.00. Said Sum should be reduced to judgment and the Court finds that for at least a portion of the time [Father] was able to make those payments.

20. In summary, the Court finds that [Father] is in contempt of Court for failure to make any payments toward the Nissan Payments, Monthly debt payments, Work Related Child Care for AYS, Work Related Child Care for Breaks and summer, Medical Expenses, School Books, School Lunches and less than the required payments for child support and extracurricular expenses. The Court finds that while [Father] was unemployed for a period of time, he did have the ability to pay the sums due during times of employment and could have made at least some effort at partial payment at all times. The Court finds that [Mother]'s requests should be granted and judgment should be entered.

21. The Court finds that two judgments should be entered against [Father] and in favor of [Mother]. First a judgment in the sum of $5,401.00 for child support arrearage with interest thereon at the

---

[1] At least one of the Children was receiving before- and after-school care from AYS, Inc. *See* Petitioner's Ex. 1.

rate applicable to child support arrearages. Second a judg[]ment for $16,546.09 for past due sums [Mother] was ordered to pay under the decree for Nissan payments, monthly debt payments, work related child care for AYS, work related child care for breaks and summer, medical expenses, school books, school lunches and extracurricular expenses. As noted above these sums are valid for the period [through] the date of the hearing herein, April 26, 2016 and have been adjusted to reflect the modification of child support ordered herein retroactive to the first Friday following the date [Father]'s petition to modify was filed.

22. [Mother] has requested her fees herein in the sum of $5,000.00. No supporting documentation was offered to substantiate the request other than the statement that she had incurred more than $5,000 in fees enforcing the decree. Without more, it is difficult for the Court to assess the reasonableness of such fees; The Court finds that a fee of $2,500 would be reasonable to enforce the right to payment and the entry of a judgment for past due sums. There were other matters litigated which required legal assistance herein, and the court is not finding that [Father] should be ordered to pay for [Mother]'s fees as to those matters nor is the court making any finding regarding the overall reasonableness of the fees charged to [Mother] by her attorney. The Court finds [Father] should be ordered to pay the sum of $2,500.00 to [Mother] within 120 days in payment of a portion of the fees she incurred herein.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED as follows:

1. Parenting time is modified to provide that which the parties have been doing. [Father] shall be entitled to exercise parenting time as the parties agree but not less than every other weekend from Friday at 6 until Monday morning unless specifically agreed by the parties in writing, every Wednesday night from after school until Thursday morning, one half of extended spring, fall and winter [b]reaks due to the children's balanced school calendar, and one half of the summer break from school.

2. Child support is modified to provide that effective October 23, 2015 and thereafter, pending further order of the Court, [Mother] shall pay child support to [Father] in the sum of $118.00 per week. In addition, the parties shall divide extracurricular expenses as

those are defined in the Decree of Dissolution, for agreed activities only, with [Mother] paying 78% and [Father] paying 22%. [Mother] as the primary custodial parent shall pay controlled expenses and controlled expenses include public school fees, books, supplies and school lunches. [Mother] shall continue to provide medical insurance for the minor children. [Mother] shall pay the first $1,660.00 per year in uninsured medical, dental, optical, orthodontia and prescription expenses. Sums in excess of said amount shall be paid 22% by [Father] and 78% by [Mother]. The allocation of medical expenses set forth above shall apply to all medical expenses incurred on or after January 1, 2016 until further order. The provisions of the decree shall apply to all medical expense incurred between the date of the decree and December 31, 2015. Child care expenses have been included in the child support calculation and shall [no] longer be paid separately beginning October 23, 2015.

3. Judgment is ordered against [Father] and in favor of [Mother] in the sum of $5,401.00 with interest thereon [at] the rate applicable to child support arrearage judgments from the date of this decree until paid in full. [Father] shall be entitled to claim a credit against this judgment in an amount equal to the difference between the Court's order of support herein against [Mother] and the sum actually paid between Friday, April 29, 2016 and the date this order was entered. The balance of this judgment shall be paid at the rate of $100 per week beginning Friday September 9, 2016 and continuing until this sum has been paid in full.

4. Judgment is ordered entered against [Father] and in favor of [Mother] in the sum of $16,546.09 for sums due from [Father] to [Mother] under the decree for Nissan payments, monthly debt payments, work related child care for AYS, work related child care for breaks and summer, medical expenses, school books, school, lunches and extracurricular expenses through April 26, 2016. Said judgment shall bear interest from April 26, 2016 until paid in full at the rate applicable to judgments in the State of Indiana.

5. [Father] shall pay to [Mother] the sum of $2,500 as reimbursement for fees incurred herein in prosecuting her action for contempt. Said sum it to be paid within 120 days of the date of this order.

ORDERED THIS 31ST DAY OF AUGUST, 2016.

Trial Court Order pp. 2-11.

Mother contends that (1) the trial court erred in ordering her to pay child support to Father and (2) even if application of the Guidelines indicated that Mother should pay child support to Father, circumstances warrant a deviation.

# Discussion and Decision

At the outset, we note that Father has not filed an Appellee's Brief. In such cases, we do not need to develop an argument for Father, and we apply a less stringent standard of review. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005). We may reverse the trial court if Mother is able to establish prima facie error, which is error at first sight, on first appearance, or on the face of it. *Id.*

# Child Support

A trial court's calculation of child support is presumptively valid. *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind.2015). We review decisions regarding child support for an abuse of discretion. [*Lovold v. Ellis*, 988 N.E.2d 1144, 1149-50 (Ind. Ct. App. 2013)]. An abuse of discretion occurs when a trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* at 1150. When reviewing a decision for an abuse of discretion, we consider only the evidence and reasonable inferences favorable to the judgment. *Id.*

*Mitten v. Mitten*, 44 N.E.3d 695, 699 (Ind. Ct. App. 2015).

## A. Base Child Support Calculation

Mother argues that the trial court abused its discretion in ordering her to pay "negative support," or support paid from the custodial parent to the non-

custodial parent. To support this argument, Mother relies in part on *Grant v. Hager*, 868 N.E.2d 801, 802 (Ind. 2007), in which the Indiana Supreme Court held that "there is a rebuttable presumption that a custodial parent is not required to make child support payments … but that a trial court has authority to deviate from that presumption in accordance with the Indiana Child Support Rules and Guidelines." *Id*. at 802.

[12] We agree, however, with this court's conclusion in *R.B. v. K.S.*, 25 N.E.3d 232 (Ind. Ct. App. 2015), that *Grant*'s holding has been superseded by rule.[2] As noted in *R.B.*, the Indiana Supreme Court adopted amended Guidelines in 2010, including the following addition to Guideline 1: "Absent grounds for deviation, the custodial parent should be required to make monetary payments of child support, if application of the parenting time credit would so require." Moreover, Guideline 3(F)(1) was amended with the following sentence:

> When there is near equal parenting time, and the custodial parent has significantly higher income than the noncustodial parent, application of the parenting time credit should result in an order for the child support to be paid from a custodial parent to a noncustodial parent, absent grounds for a deviation.

---

[2] We are not convinced by Mother's argument that *Grant* remains good law after the 2010 amendments to the Guidelines. Although the parenting time happened to be unequal in *Grant*, that fact was not mentioned in the Court's analysis and was not a part of the holding, which was based solely on the fact that the custodial parent was ordered to pay child support to the non-custodial parent. *Grant*, 868 N.E.2d at 803-04. Because *Grant*'s holding applied to *all* cases where the non-custodial parent sought child support from the custodial parent—not just those cases where parenting time was also unequal—the 2010 amendments superseded it entirely.

In addition to arguing that *Grant* is still good law, Mother argues that the two above amendments read together create a rebuttable presumption in favor of an order of negative child support only in cases where parenting time is near-equal. We cannot agree with this interpretation. Guideline 1 clearly states that the custodial parent should be made to pay child support if the Guidelines so dictate, without regard to how parenting time is shared. The relevant language in the amended Guideline 3(F)(1) does nothing more than apply the general rule to one particular set of circumstances, *i.e.*, where parenting time is near-equal and the custodial parent has a significantly higher income. The language of Guideline 3(F)(1) does nothing to limit the general language of Guideline 1, which, as mentioned, applies to all cases where the Guidelines dictate that a custodial parent should pay child support to a non-custodial parent. Although we are inclined to agree with Mother's assessment that she and Father do not equally share parenting time,[3] this does not create a rebuttable presumption in her favor. So, we are left with the question of whether straightforward application of the Guidelines produces the child-support figure ordered by the trial court, and Mother does not dispute that it does.

## B. Deviation From Guideline Amount

That said, Mother also argues that, even if application of the Guidelines supports the trial court's order, ordering the Guideline amount is unreasonable,

---

[3] The commentary to Guideline 6 includes the following: "Parenting time is considered equally shared when it is 181 to 183 overnights per year."

unjust, and inappropriate. In light of the unique circumstances of this case, we conclude that a modification of the trial court's order is warranted. Mother notes that the trial court found that Father owes her almost $22,000.00 in various obligations, including $5401.00 in back child support accumulated since the dissolution in April of 2014. The trial court also found that Father had been able to make some of the court-ordered payments that he missed, but had not. Finally, the trial court's finding in the appealed order that Father was in contempt of court is the second time he has been found in contempt, the first time occurring in September of 2015.

[15] While we affirm the trial court's conclusion that Mother is obligated to pay $118 per week in child support, we remand with instructions to order Mother to apply those payments directly to Father's debt, until satisfied in full, instead of paying the money to him. At the same time, we instruct the trial court to eliminate Father's obligation to pay $100 per week against his child-support arrearage.[4] Given Father's consistent history of failure (or refusal) to satisfy his court-ordered obligations to the Children and Mother, we have our doubts that he will begin to do so now, and our disposition essentially takes the option of non-compliance out of his hands. With neither party required to make direct payments (at least not until Father's debt is satisfied), Mother will not be forced to go to court again on the basis that Father is not making his.

---

[4] This represents a net loss to Father of $18.00 per week as compared to the trial court's disposition.

# Conclusion

We affirm the trial court's conclusion that Mother is obligated to pay $118.00 per week in child support. However, in light of the circumstances of this case, we remand with the following instructions: modify the order to (1) apply Mother's $118.00 per week child-support obligation to Father's entire $21,947.09 debt to Mother until it is satisfied, at which point the child support payment will be paid to Father; (2) require Mother to monitor the satisfaction of Father's debt, including the calculation of interest, and provide annual reports to the trial court; and (3) eliminate Father's $100.00 per week payment to Mother. We affirm the trial court's disposition in all other respects.

We affirm the judgment of the trial court in part and remand with instructions.

Vaidik, C.J., and Brown, J., concur.